# United States Court of Appeals for the Federal Circuit

---

**IN RE:  CSB-SYSTEM INTERNATIONAL, INC.,**
*Appellant*

---

2015-1832

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 90/012,210.

---

Decided:  August 9, 2016

---

BRUCE KOCH, Schmidt LLC, New York, NY, argued for appellant. Also represented by THORSTEN SCHMIDT.

JEREMIAH HELM, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Michelle K. Lee. Also represented by THOMAS W. KRAUSE, AMY J. NELSON.

---

Before NEWMAN, MOORE, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

CSB-System International, Inc. appeals the decision of the Patent Trial and Appeal Board upholding an examiner's rejection of all claims of CSB's U.S. Patent No. 5,631,953 as unpatentable over the prior art during an ex parte reexamination.  CSB argues that the Board construed claims applying an incorrect legal standard and

that, regardless of the standard, the Board misconstrued claim terms which led to rejection of all claims of the '953 patent. We agree with CSB that the Board should have applied the *Phillips* standard of claim construction rather than the broadest reasonable interpretation standard used by the examiner because the '953 patent expired during the reexamination. We conclude, however, that the Board's claim construction was correct even under the *Phillips* standard, and we affirm its rejection of all claims of the '953 patent as unpatentable over the prior art.

BACKGROUND

CSB is the assignee of the '953 patent, issued May 20, 1997, and directed to a circuit arrangement for integrating an electronic data processing ("EDP") system with telephone systems connected to an integrated services digital network ("ISDN") telephone network. Figure 1 illustrates the arrangement the patent discloses.



FIG.1

In this arrangement, telephone line "a" (shown using a dotted line) connects individual telephone units 2, 11, 13 directly with an intelligent telephone installation 3, which interfaces with the ISDN network 1. A local area network ("LAN") 9, with a LAN server 10, aggregates personal computers 4, 12, 14, which each connect to the intelligent telephone installation 3 through an integration component 5. The integration component is a computing system 6 running software 7 and including an ISDN connector 8.

The '953 patent contemplates providing data from incoming telephone calls over the LAN to personal computers. For example, when an incoming call is received from the ISDN network 1, the intelligent telephone installation 3 will route the telephone call to one of the telephones 2, 11, 13 and will send call information to the integration component 5. A personal computer, upon having a call routed to its associated telephone by the intelligent telephone installation 3, will retrieve call information from the integration component via the LAN 9.

Independent claim 1 of the '953 patent is representative and recites:

> 1. A circuit arrangement for integration of EDP systems in utilization of telephone systems connected to a public ISDN or Euro ISDN telephone network, the circuit arrangement comprising
>
> a plurality of telephone extensions which are directly connectable to a telephone network selected from the group consisting of a public ISDN telephone network and Euro ISDN telephone network;
>
> a first line;
>
> an intelligent telephone system arranged so that said telephone extensions are connectable with said at least one telephone network through

said first line and said intelligent telephone system;

a plurality of *personal computers*;

an integration element arranged between said intelligent telephone system and said personal computers, said integration element receiving signals via at least one connection element selected from the group consisting of an SDLC connection element and an ISDN connection element via a second line from said at least one telephone network via said intelligent telephone system and sending back signals to said at least one telephone network, said integration element also sending a data record assigned an appropriate information via a third line, via a LAN connected to a *LAN server* by a fourth line and via a fifth line to said personal computers and receiving a data record from said personal computers again;

a computing system; and

a software layer arranged so that a conversion of the signals into a data record and vice versa is carried by said integration element, by said computing system, by said software layer and by said at least one connection element with an internal software.

'953 patent col. 5 l. 52 – col. 6 l. 12 (emphases added).

A third-party requested ex parte reexamination of the '953 patent, which was granted. As part of the reexamination proceeding, the examiner construed several of the '953 patent's claim terms. Pertinent here, the examiner refused to depart from the plain meaning of the term "personal computer" by not, as CSB had argued, inserting

a limitation which would exclude personal computers that emulate terminals.[1]  The examiner also declined to adopt CSB's construction of the claim term "LAN server," which sought to read in that the "LAN server" must provide shared services to other components on the LAN and to respond to requests from clients.

The primary prior art patent considered during the reexamination was U.S Patent No. 5,097,528 ("Gursahaney").  Gursahaney is directed to "a subsystem for providing a programmable interface between a host based application program and a telephone network to automatically transfer operands derived from caller identification data from the telephone network to the host application program."  Gursahaney col. 1 ll. 50–54.  Gursahaney discloses a system including "a workstation coupled to a telephone network for receiving caller identification data and coupled to a host computer running a menu driven host application program which exchanges menu images with the workstation . . . ."  *Id.* col. 1 ll. 55–58.  Gursahaney explains that its workstations "can be an IBM PS/2 model 80, for example," *id.* col. 15 ll. 28–29, with a memory which "includes a multi-tasking operating system . . . and a terminal emulation program," *id.* col. 16 ll. 6–10.  The workstations in Gursahaney are connected to a LAN through which they can access a host computer, which in turn provides the workstations with call information.  *Id.* col. 4 ll. 37–48.  Figure 4 depicts an embodiment of Gursahaney.

---

[1]    A terminal is a device through which data may be sent, received, and displayed.  *E.g.*, J.A. 9118.



FIG. 4

The examiner rejected claims 1–6 as anticipated by Gursahaney and claims 7–8 as obvious over: (1) Gursahaney in view of U.S. Patent No. 5,046,183 ("Dorst") and U.S. Patent No. 4,995,073 ("Okata"); and (2) Gursahaney in view of Dorst and U.S. Patent No. 4,652,933 ("Koshiishi"). CSB appealed to the Board, and during the pendency of that appeal, the '953 patent expired. The Board nonetheless decided to apply the broadest reasonable interpretation ("BRI") standard when analyzing the claim constructions entered by the examiner, ultimately agreeing with the constructions and affirming the examiner's rejection of all claims of the '953 patent.

CSB appealed to us, and we have jurisdiction under 28 U.S.C § 1295(a)(4)(A).

## DISCUSSION

We review the Board's ultimate claim construction in a reexamination de novo. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 840–41 (2015); *In re Teles AG Informationstechnologien*, 747 F.3d 1357, 1366 (Fed. Cir. 2014). We review any determinations involving extrinsic

evidence for substantial evidence, but in this case "because the intrinsic record fully determines the proper construction, we review the Board's claim constructions de novo." *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1297 (Fed. Cir. 2015) (citing *Teva*, 135 S. Ct. at 840–42).

## I.

Typically, claims in issued patents are construed using the framework set forth in *Phillips v. AWH Corp.*, which emphasizes considering the plain meaning of the claim terms themselves in light of the intrinsic record. 415 F.3d 1303, 1312–15 (Fed. Cir. 2005) (en banc). During reexamination proceedings of unexpired patents, however, the Board uses the "broadest reasonable interpretation consistent with the specification" standard, or BRI. *In re NTP, Inc.*, 654 F.3d 1268, 1274 (Fed. Cir. 2011) (requiring use of BRI in reexamination of unexpired patents); *cf. Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2145 (2016) (acknowledging Board use of BRI during reexamination (citing *In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984))). The rationale for permitting this broader standard in reexaminations is that a patent owner before the Patent and Trademark Office ("PTO") with an unexpired patent "may amend claims to narrow their scope," negating any unfairness that may otherwise result from adopting the BRI standard. *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007) (citing *In re Am. Acad. Of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004); *Yamamoto*, 740 F.2d at 1571); *see also Cuozzo*, 136 S. Ct. at 2145–46. Further justification comes from the fact that constructions unhinged from the patent in which they are found are erroneous even under BRI, as the BRI claim construction exercise must always be reasonable and must consider the claims "in light of the specification and teachings in the underlying patent." *Proxyconn*, 789 F.3d at 1298 (quoting *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1260 (Fed. Cir.

2010)). Even so, when an expired patent is subject to reexamination, the traditional *Phillips* construction standard attaches. *In re Rambus Inc.* (*Rambus I*), 694 F.3d 42, 46 (Fed. Cir. 2012).

The '953 patent expired on May 20, 2014, after the examiner issued a final rejection but before consideration by the Board. The Board's decision acknowledged that the patent had expired, but nevertheless applied the BRI standard. The Board contended that employing BRI was proper because CSB had the opportunity to amend its patent claims while they were pending before the examiner in the reexamination, as the patent had yet to expire.

We disagree with the Board's approach. When a patent expires during a reexamination proceeding, the PTO should thereafter apply the *Phillips* standard for claim construction. We hold as much regardless of whether this means that the Board applies a different standard than the examiner. Our decision in *In re Rambus, Inc.* (*Rambus II*), 753 F.3d 1253 (Fed. Cir. 2014) is instructive. In *Rambus II*, the patent undergoing reexamination expired after the examiner issued a right of appeal notice. *See id.* at 1255–56; *Rambus II* Joint Appendix at 64, 130. While the Board's decision did not indicate whether it reviewed the examiner's claim construction under the BRI standard or the *Phillips* standard, *see Rambus II* Joint Appendix at 1–54, on appeal we indicated that we must use the *Phillips* standard because the patent had expired during the appeal before the Board. *Rambus II*, 753 F.3d at 1256; *see also Facebook, Inc. v. Pragmatus AV, LLC*, 582 F. App'x 864, 868–69 (Fed. Cir. 2014) (non-precedential) (applying *Phillips* standard when patent expired after the Board's reexamination decision pending appeal to the Federal Circuit).

The PTO argues that because the Board operates as a tribunal of review for the examiner's work, the Board must scrutinize claims consistent with the standard used

by the examiner in the first instance, even after a patent has expired. But, if anything, the *Phillips* standard would result in a more *narrow* claim scope and, consequently, we see little chance of the Board issuing new grounds of rejection based on a narrower claim scope. *See Facebook*, 582 F. App'x at 869 (explaining that construction of term under the BRI standard "cannot be narrower" than that under the *Phillips* standard). In many cases, the claim construction will be the same under the *Phillips* and BRI standards. *See, e.g.*, *Proxyconn*, 789 F.3d at 1302 n.1 (noting that the claim term under review had the same construction under the BRI and *Phillips* standards); *Facebook*, 582 F. App'x at 869 ("The broadest reasonable interpretation of a claim term may be the same as or broader than the construction of a term under the *Phillips* standard.").

We are also not persuaded by the PTO's argument that BRI should apply here because the patent owner could have amended its claims while before the examiner. The policy underlying our embrace of BRI in limited circumstances does not extend to cases where a patent expires during a reexamination because the patent owner's ability to amend is substantially diminished when this occurs regardless of the stage of the reexamination. Under the PTO's regulations, a patentee may not amend a claim that expires during prosecution. 37 C.F.R. § 1.530(j) ("No amendment may be proposed for entry in an expired patent."). Moreover, patents that expire during an appeal to the Board, as in this case, will not be issued with amended claims even if the patent owner amended them while before the examiner. *See Institut Pasteur & Universite Pierre Et Marie Curie v. Focarino*, 738 F.3d 1337, 1343 (Fed. Cir. 2013) (holding that, under § 1.530(j), (k), "the PTO may not issue the amended claim now that the patent has expired" after the Board issued a reexamination decision). Because it is not always clear how much time a Board appeal will take and at what

point a patent owner can reopen prosecution and amend its claims, and we do not think an inquiry into whether or not a patent owner could have amended its claims, or speculation as to whether the patent owner could in the future have an opportunity to amend its claims, should resolve the question.

In sum, we hold that BRI is not a monolithic standard that the Board can use even after a patent expires. Rather, consistent with our prior precedent and customary practice, we reaffirm that once a patent expires, the PTO should apply the *Phillips* standard for claim construction.

## II.

While we hold that the Board erred in using the BRI standard, the Board's use of BRI did not produce a different result than the one we reach using the *Phillips* standard. *See, e.g.*, *Proxyconn*, 789 F.3d at 1302 n.1; *Facebook*, 582 F. App'x at 869. Even under the *Phillips* standard, there is no basis for limiting the claims as narrowly as CSB argues.

First, contrary to CSB's arguments, there is no support whatsoever for limiting the broad claim term "personal computer" in the '953 patent to exclude personal computers running software to emulate terminals. In the context of the '953 patent, a personal computer is defined by its hardware and computing capability, not by the software it happens to run at a point in time. Indeed, the specification refers only to PCs generically, with no special or unusual explanation. *E.g.*, '953 patent col. 2 l. 35 – col. 3 l. 14, col. 4 l. 33 – col. 5 l. 17. Nothing in the '953 patent suggests that any other understanding should apply. Thus, we agree with the Board's view of "personal computer" and decline to import the negative limitation sought by CSB. Because CSB's arguments that Gursahaney does not teach a "personal computer" hinge on its

proffered construction, we reject CSB's argument that Gursahaney fails to teach a personal computer.

We are also not convinced by CSB's argument that the term "LAN server" requires embellishment beyond its plain meaning. CSB argues that LAN server should be construed to expressly require purported characteristics of a LAN server, such as providing shared services to other components on the LAN and responding to requests from clients. At the same time, however, CSB describes the Board's construction of the term as "agreed upon." Appellant Br. 14. Moreover, its specific arguments relate to a comparison of the '953 patent claims to the prior art—which is part of the anticipation analysis, reviewed for substantial evidence, not claim construction. *Id.* at 14, 36–38. Without a "fundamental dispute regarding the scope" of this term, construction is not necessary. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

Substantial evidence supports the Board's finding that Gursahaney discloses a LAN server. Gursahaney discloses that the "workstation components 100 [are] connected by a token ring local area network (LAN)," Gursahaney col. 4 ll. 37–38, and that these workstations "access[] host applications running on the host 200, to provide caller-specific information to the service representative," *id.* col. 4 ll. 46–48.

Because there is substantial evidence that Gursahaney discloses the "personal computer" and "LAN server" limitations, the Board did not err in rejecting the sole independent claim of the '953 patent, claim 1, as anticipated by Gursahaney. The Board also rejected dependent claims 2–6 as anticipated by Gursahaney and claims 7 and 8 as obvious over Gursahaney in view of several prior art references not directly at issue in this appeal. CSB makes no particularized argument to support patentability of these dependent claims apart from the arguments it

makes for claim 1, so we also affirm these rejections. Having affirmed the Board's rejection of all claims on these grounds, we need not discuss the other prior art grounds that the Board found rendered the claims of the '953 patent unpatentable.

CONCLUSION

For the foregoing reasons, we affirm the Board's decision to reject all claims of the '953 patent in view of prior art presented during reexamination.

**AFFIRMED**